In re SMYTH.

(District Court, E. D. Pennsylvania. February 19, 1909.)

No. 2,884.

BANKRUPTCY (§ 140*)—PROPERTY VESTING IN TRUSTEE.

A corporation agreed to furnish $2,500 to enable a debtor to make settlements with his other creditors, a list of whom he supplied. The money was placed in the hands of the corporation's attorney, to be paid out by him direct to the creditors shown on such list, and the corporation took the debtor's judgment note for the amount, together with his other indebtedness to it, and afterward entered judgment on such note. The debtor was afterward adjudged a bankrupt, and the corporation proved the full amount of its judgment and received a dividend thereon. At the time of the bankruptcy the sum of $300 of the amount placed in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hands of its attorney, and which had been turned over by him to a third person to make settlement with a certain creditor, had not been paid out, but the corporation had no knowledge of such fact. *Held*, that under the agreement it was not the intention that any part of the money furnished by the corporation should be paid to the bankrupt, and that the $300 did not belong to his estate and was not recoverable by his trustee, even though the corporation through mistake had proved its claim therefor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy. On certificate of referee.

Referee D. W. Amram filed the following opinion and made his order thereon February 24, 1908:

This matter comes before me upon the petition of the trustee and the separate answers of James S. Alcorn and F. A. Poth & Sons, Inc. From the testimony taken before me I find the following facts:

In April, 1906, Isaac Smyth, a retail liquor dealer, being then indebted to F. A. Poth & Sons, Inc., brewers, for about $5,000, asked for an additional loan of $2,500. Negotiations for this loan were made with Frederick J. Poth, the president of the said corporation, to whom Smyth stated that he was largely indebted to other creditors, and that he had succeeded in obtaining their agreement to settle their respective claims at about 25 per cent., and that if F. A. Poth & Sons, Inc., granted this loan for this purpose, the corporation would be his only creditor. The president of the corporation agreed to make the loan, and subsequently the loan was formally granted by a resolution of the board of directors of the corporation, and, in accordance with the understanding previously had between Frederick J. Poth and Isaac Smyth, the sum of $2,500 was placed by F. A. Poth & Sons, Inc., in the hands of their attorney, Franz Ehrlich, Jr., Esq., with instructions to distribute the same among the creditors of Isaac Smyth, in accordance with the statement which he had given. It was not intended that any of this money should be paid to Smyth himself, nor did Smyth ever expect to receive any of it, and in fact none of the money ever came into his hands.

A statement sworn to by Smyth and containing a list of all of his creditors among whom the $2,500 were to be distributed was placed by him in Mr. Ehrlich's hands, and all of the said $2,500 were thereupon distributed in accordance with the said statement, with the exception of two items, one of $300 and one of $167. The latter seems to have been a balance over and above the sum required to make the said settlement, and this balance was awarded to James S. Alcorn, Esq., for services rendered by him as attorney for said Isaac Smyth. As to the item of $300, a check was drawn by Mr. Ehrlich to the order of B. F. Owens, Esq., attorney for A. L. Whealton, and delivered to Mr. Alcorn for the purpose of handing over the same to the payee. Owens, however, declined to accept the check, and asked that the amount be divided and two checks drawn, one for $75 to the order of B. F. Owens, and the other for $225 to the order of John E. Beatty. Mr. Alcorn thereupon returned the check of $300 to Mr. Ehrlich. The latter drew two checks as aforesaid, and delivered them to Mr. Alcorn, who, upon tendering these checks to Mr. Owens, was informed that A. L. Whealton, the creditor, declined to make settlement in accordance with the terms agreed upon. Mr. Alcorn thereupon returned the two checks to Mr. Ehrlich, stating, however, that if Mr. Ehrlich would give him the sum of $300 he would probably be enabled to obtain a release of this claim, as he was under the impression that it could be settled, notwithstanding what had occurred. But the settlement was never made, and the money is still in Mr. Alcorn's hands.

At the time when the corporation granted the loan to Mr. Smyth he signed a judgment note to the order of the corporation for $7,500, a sum which included his prior indebtedness of $5,000 and the present loan of $2,500, and this note was recorded in the court of common pleas No. 1.

Subsequently Isaac Smyth was adjudicated a bankrupt, and thereafter F. A. Poth & Sons, Inc., filed a proof of debt against the bankrupt estate for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the full amount of its claim, to wit, $10,899.11, a sum which included the said loan of $2,500, and received a dividend of 15 per cent. upon the said claim. At the time when the said proof of debt was filed the claimant did not know that the sum of $300, which was to have been paid to Whealton, had not been disposed of in accordance with the original agreement.

I am of the opinion that upon these facts the said sum of $300 never became the property of the bankrupt, and that it, together with the balance constituting the full amount of the loan of $2,500, was placed in the hands of Mr. Ehrlich, as attorney for F. A. Poth & Sons, Inc., to be applied to a specific purpose. The checks drawn by Mr. Ehrlich were drawn for this purpose, and the $300, which were finally paid over by Mr. Ehrlich to Mr. Alcorn, were not paid to the latter as attorney for Isaac Smyth, to be received by him as the property of Isaac Smyth, but were paid to him at his request, upon his assurance to Mr. Ehrlich that if the money were placed in his hands he would be able, by means known to himself, to apply the same in satisfaction of the claim of Whealton in accordance with the original agreement.

It is argued that because F. A. Poth & Sons, Inc., granted a loan to Isaac Smyth of $2,500, and took judgment against Smyth for the said loan, the title to the said $2,500 immediately vested in the said Isaac Smyth. I am of the opinion, however, that the formal resolution of the board of directors of F. A. Poth & Sons, Inc., did not constitute the whole contract between the corporation and Smyth, and that the conditions under which the loan was asked for and granted clearly establish the fact that none of this money was intended to pass to Isaac Smyth, but that all of it was intended to be paid to his creditors, and that the note taken by F. A. Poth & Sons, Inc., was merely collateral security for the repayment of the money to the corporation by Smyth if the same was distributed in accordance with the terms of the settlement.

The fact that F. A. Poth & Sons, Inc., subsequently filed their proof of debt against the bankrupt estate of Isaac Smyth for the full amount of the claim, allowing no credit on account of the item of $300, does not alter the situation, inasmuch as I find that at the time when the proof of debt was filed the claimant did not know that this sum of $300 had not been applied to the purpose for which it was given; but as the record shows that F. A. Poth & Sons, Inc., have received a dividend of 15 per cent. on the full amount of their claim, which dividend includes $45 on account of the said item of $300, equity requires that a proper credit for the said amount of $300 be given on their proof of debt, and that they return the said sum of $45 to the trustee in bankruptcy.

I therefore find and conclude that the said sum of $300 is the property of F. A. Poth & Sons, Inc., and I shall enter an order directing the said James S. Alcorn to distribute the said sum of $300 as follows: To F. A. Poth & Sons, Inc., $255; to Hans J. Ehrlich, trustee in bankruptcy for Isaac Smyth, $45; that the proof of debt of the said F. A. Poth & Sons, Inc., shall be reduced by the amount of the said $300, and shall be allowed in the sum of $10,599.11, and that further dividends, if any, shall be paid on the said balance of $10,599.11 only.

Order: And now, February 24, 1908, upon consideration of the petition of the trustee, filed December 10, 1907, the answer of James S. Alcorn, filed December 17, 1907, and the answer of F. A. Poth & Sons, Inc., filed January 16, 1908, and after hearing testimony and argument of counsel, and in accordance with the foregoing opinion, it is ordered that James S. Alcorn distribute the sum of $300 now in his hands as follows: To F. A. Poth & Sons, Inc., $255; to Hans J. Ehrlich, trustee in bankruptcy for Isaac Smyth, $45. And it is further ordered that allowance of the proof of debt of the said F. A. Poth & Sons, Inc., in the sum of $10,899.11, be reconsidered, and that the said proof of debt be now allowed in the sum of $10,599.11, and that further dividends, if any, be allowed upon the said claim as reduced to $10,599.11.

The following opinion and order of the same referee was subsequently filed:

On February 28, 1908, the petition of Hans Ehrlich, trustee, and Isaac Smyth, claimant, was filed in the above matter, praying that the question of

title to $300, which, by an opinion and order of the referee. filed on February 24, 1908, was found to be in F. A. Poth & Sons, Inc., should be reopened and a rehearing granted to take additional testimony. On March 9, 1908, 1 heard argument on behalf of the petitioners and F. A. Poth & Sons, Inc., and on March 24, 1908, entered an order dismissing the petition. On March 31, 1908, the said trustee and claimant filed an exception to the said order of March 24, 1908, and on the same day filed a petition praying for a certificate of the record to the judges of the District Court.

The petition to reopen the case and grant a rehearing to take additional testimony purports to set forth the facts which the petitioners expect to be able to prove. A careful examination of this petition and the argument of counsel thereon convinces me that the allegations in the said petition are either irrelevant and immaterial, or insufficient by reason of vagueness, or already on record in the testimony taken in the proceedings and considered by me in my opinion and order of February 24, 1908.

The first allegation in the said petition, as to the discovery that a certain agreement existed between F. A. Poth & Sons, Inc., and Isaac Smyth, whereby payments were to be made in certain sums on account of beer sold by the said F. A. Poth & Sons, Inc.. to the said bankrupt, and that such payments were made until January 28, 1907, when a certain execution issued in the matter of Whealton v. Smyth, is wholly immaterial and irrelevant.

The second allegation, to wit, "that the said F. A. Poth & Sons, Inc., at the time of the said execution by Whealton well knew that the said $300 had not been paid to Whealton," is a statement of a conclusion, and not of a fact. At the argument I called the attention of counsel for the petitioners to the insufficiency of this statement, and asked him to state whether he could supplement it by a statement of fact. This, counsel stated, he was unable to do, but that he would offer the testimony of the bankrupt as to statements made to him by an employé of F. A. Poth & Sons, Inc., to wit, the driver of the wagon that supplied him with beer, to support the following allegation, that "on account of the said execution and levy it (F. A. Poth & Sons, Inc.) could not continue to deliver beer to the said Smyth on credit of two weeks as before," etc., and that upon this testimony was based the conclusion that F. A. Poth & Sons, Inc., at the time of the said execution well knew that the said $300 had not been paid to Whealton.

The third allegation, as to the amount of payments on account of the judgment note of Smyth held by Poth & Sons, Inc., is immaterial and irrelevant.

The fourth allegation, as to Smyth's efforts to ascertain the name of the person who held the $300, is irrelevant and immaterial.

The fifth allegation, wtih reference to the alleged payment of the $300 to B. F. Owens, and Owens' denial of the receipt of the same, is immaterial, since it appeared in the testimony taken before me that the said $300 were tendered to B. F. Owens and refused by him.

The sixth allegation, referring to the subpœna served on F. J. Poth, president of the company, and statements made to him at the time by Smyth, is irrelevant and immaterial, except in so far as it disproves the second allegation in the said petition "that the said F. A. Poth & Sons, Inc., at the time of the said execution by Whealton well knew that the said $300 had not been paid to Whealton."

All of the subsequent allegations, in so far as they are relevant, contain statements of fact which appear fully of record and were considered by me in my opinion filed February 24, 1908.

And now, March 31, 1908, upon consideration of the exception to the order of the referee, filed March 24, 1908, and in accordance with the foregoing opinion, it is ordered that the said exception be, and the same is, hereby dismissed.

Harry S. Mesirov, for claimant.
S. Morris Waln, for trustee.

J. B. McPHERSON, District Judge. I fully agree with the finding of the learned referee that the $300 which has been specifically followed into the hands of James S. Alcorn was not the property of

the bankrupt, and therefore that the trustee has no title thereto. But the order appended to the report cannot be sustained; it distributes the money in Mr. Alcorn's hands, and is radically inconsistent with the conclusion that the fund did not belong to the bankrupt. If this is true, the District Court has no further jurisdiction in the premises, and has therefore no power to make distribution. The referee's suggestions, however (for they can only be considered as suggestions), seem to do substantial justice, and, if the parties choose to carry them out, I may say that no objection appears to such voluntary action. But the only enforceable decision that the court has jurisdiction to make is that the trustee has no right to the money.

The order entered by the referee is, therefore, so modified as to read that the trustee's petition is refused.